**UNITED STATES of America, Appellee,**

v.

**$55,518.05 IN U.S. CURRENCY.**

**Appeal of Gary GOLDEN.**

No. 83–5257.

United States Court of Appeals, Third Circuit.

Argued Oct. 25, 1983.

Decided Feb. 21, 1984.

Bradley S. Gelder (argued), Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Constance M. Bowden (argued), Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Before GIBBONS, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, JR., Circuit Judge.

Appellant Gary Golden appeals from an order of the United States District Court for the Western District of Pennsylvania denying his motion to set aside the entry of default and default judgment of forfeiture of $55,518.05. The district court denied Golden's motion because he failed to allege facts sufficient to establish a meritorious defense to the forfeiture. Because we find that the district court did not abuse its discretion, we will affirm the district court's order.

### I.

The facts of this case are uncontested. Appellant Gary Golden seeks to recover $55,518.05 that was seized by agents of the United States Drug Enforcement Administration and the Federal Bureau of Investigation. The agents confiscated the money on November 9, 1982 when they arrested Golden for attempting to purchase a controlled substance, cocaine hydrochloride, in violation of the Drug Abuse Prevention and Control Act ("Act"), 21 U.S.C. § 881. A federal grand jury subsequently returned a multi-count indictment charging Golden, *inter alia,* with attempted possession of a controlled substance, cocaine hydrochloride, with the intent to distribute it. Upon his arrest, Golden was incarcerated in the Allegheny County Jail where he remained during the entire time relevant to this appeal.

On December 23, 1982, almost six weeks following Golden's arrest, the government initiated this forfeiture action under the Act.[1] The government claims that the money is subject to forfeiture under Section 881(a)(6) because Golden intended to use it to purchase cocaine hydrochloride in violation of the Act. A few days after filing

1. The relevant section of 21 U.S.C. § 881 provides:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

  .    .    .    .    .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter . . . .

21 U.S.C. § 881(a)(6).

this suit the government published a notice of this suit in the Pittsburgh Press and the Pittsburgh Legal Journal.

The government also notified Golden's attorney in the criminal prosecution, Thomas Crawford, that it had instituted this forfeiture action. Crawford informed the government that Golden intended to file a claim to the money. However, the record does not include a memorialization of these communications or the dates on which they occurred.

Crawford could not represent Golden in this forfeiture action because he was appointed by the court to defend Golden in the criminal prosecution, and the terms of Crawford's appointment did not permit him to represent Golden in this civil action. Moreover, responding to a government inquiry, the district court in a letter dated February 9, 1983 declared that it did not possess authority to appoint counsel for Golden in this civil forfeiture action. A copy of this letter was sent to Crawford and to Golden.

Almost two weeks after the district court's letter of February 9, 1983 informed the parties of its lack of authority to appoint counsel, the government advised the court that it had "received no further indication that Mr. Golden has either sought to obtain private counsel for this matter or to otherwise secure counsel to perfect his claim." Appendix ("App.") at 31a. Expressing its wish to promptly conclude this litigation, the government informed the district court that it had filed an "application for entry of default with the Clerk of Courts and will file [a] motion for entry of default judgment as soon as the Clerk acts on our application." Id. A copy of this letter was sent to Golden.

The Clerk of Courts entered the default on February 22, 1983, the same day on which the government applied for its entry. The following day the district court granted and entered default judgment of forfeiture against Golden.

On March 8, 1983, about two weeks after the entry of default judgment, one Bradley S. Gelder, Esquire, filed a motion on behalf of Golden pursuant to Fed.R.Civ.P. 55(c) and 60(b) to set aside the entry of default and of default judgment and to permit Golden to file a claim to the forfeited money "on the ground that excusable neglect caused the delay in filing his claim . . . ." Id. at 7a. Golden filed an affidavit stating that his incarceration in the Allegheny County Jail since November 9, 1983 "made it impossible until March 3, 1983, to retain an attorney to file a claim to the . . . money." Id. at 8a. He also alleged that he had a just and valid claim to the money and that it was not "subject to forfeiture under the provisions of 21 U.S.C. § 881, i.e., it was neither furnished nor intended to be furnished by any person in exchange for a controlled substance." Id. at 9a.

The government opposed Golden's motion and persuaded the district court that Golden failed to set forth the existence of a meritorious defense. Accordingly, the district court entered an order on March 8, 1983 denying Golden's motion to set aside the default and default judgment from which Golden appeals.

## II.

■ A decision to set aside the entry of default pursuant to Fed.R.Civ.P. 55(c)[2] and a default judgment pursuant to Fed.R. Civ.P. 60(b)[3] is left primarily to the discretion of the district court. *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir.1951). We recognize, however, that this court does not favor entry of defaults or default judgments. We require doubtful

---

2. Fed.R.Civ.P. 55(c) provides:
(c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

3. Fed.R.Civ.P. 60(b) provides:

(b) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . .

cases to be resolved in favor of the party moving to set aside the default judgment "so that cases may be decided on their merits." *Id.* at 245. *See also Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 122 (3d Cir.1983); *Feliciano v. Reliant Tooling Company, Ltd.,* 691 F.2d 653, 656 (3d Cir.1982); *Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir.1982).

■ Nevertheless, we do not set aside the entry of default and default judgment unless we determine that the district court abused its discretion. We require the district court to consider the following factors in exercising its discretion in granting or denying a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. *Gross v. Stereo Component Systems, Inc.,* 700 F.2d at 122; *Feliciano v. Reliant Tooling Company, Ltd.,* 691 F.2d at 656; *Farnese v. Bagnasco,* 687 F.2d at 764.

The threshold question in this case is whether Golden has established a meritorious defense. This is the critical issue because without a meritorious defense Golden could not win at trial. Therefore, there would be no point in setting aside the default judgment and remanding for a forfeiture hearing if Golden could not demonstrate the possibility of his winning.

■ The showing of a meritorious defense is accomplished when "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d at 244; *Farnese v. Bagnasco,* 687 F.2d at 764. In *Tozer, supra,* the plaintiff averred, and the defendant denied, that defendant's agent bound defendant for the sale of six tank cars of crude corn oil.

However, defendant's answer also alleged specific facts beyond the general denial which provided the court with a basis to determine whether defendant could make out a complete defense:

> Defendant alleges that the oil shipped to plaintiff was "Amerikorn Crude Oil—Mill Run" and that the sale was made "subject to the usual terms and conditions applicable to the sale of such commodity by the defendant." Defendant forthwith mailed to plaintiff memoranda and confirmations whereby it expressly negatived any express or implied warranties of quality. Thus, defendant does not appear to deny plaintiff's averment that there was an oral contract entered into between the parties on or about August 20, 1946; but there is a one hundred eighty degree disagreement as to the actual terms of that agreement.

*Tozer v. Charles A. Krause Milling Co.,* 189 F.2d at 244. We concluded that defendant established a meritorious defense because its allegations, if established at trial, would constitute a complete defense. More recent cases decided by this court have similarly involved defendants' answers which alleged specific facts beyond simple denials or conclusionary statements. *See Gross v. Stereo Component Systems, Inc.,* 700 F.2d at 123; *Feliciano v. Reliant Tooling Co. Ltd.,* 691 F.2d at 657; *Farnese v. Bagnasco,* 687 F.2d at 764.

■ To determine whether Golden's answer establishes a complete defense we must look to the forfeiture action itself and what is required of a defendant in order to successfully defend his property. In a forfeiture action brought under 21 U.S.C. § 881(a)(6) the government bears the initial burden of showing probable cause to believe that the property in question was intended to be used for the purpose of acquiring a controlled substance.[4] *United States v.*

---

4. This burden is the same as that applicable to forfeitures brought under the customs laws by virtue of 21 U.S.C. § 881(d). 21 U.S.C. § 881(d) provides in relevant part:

(d) The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof.

*$2,500 in United States Currency,* 689 F.2d 10, 12 (2d Cir.1982); *United States v. $83,320 in United States Currency,* 682 F.2d 573, 576–77 (6th Cir.1982). Once the government establishes probable cause the burden of proof shifts to the defendant to show that the property was not to be used for this purpose. *Id.* On the facts of this case the critical question relating to the showing of a meritorious defense is whether Golden's mere assertion that the money "was neither furnished nor intended to be furnished by any person in exchange for a controlled substance," App. at 9a, constitutes a meritorious defense.

■ The government in the instant case has alleged facts which meet its burden of showing probable cause to believe that the money was intended to be used to purchase cocaine hydrochloride in violation of the Act. It avers that the money was seized from a residence occupied by Golden at the time of his arrest; that the money was seized in connection with his arrest for attempting to purchase the cocaine from government agents; that following an investigation of this event a federal grand jury indicted Golden, *inter alia,* for attempted possession of a controlled substance.

Golden neither denies any of these averments, nor questions whether the government has established probable cause. He merely asserts that the money "was neither furnished nor intended to be furnished by any person in exchange for a controlled substance." App. at 9a. Furthermore, he fails to set forth any allegations containing facts which, if proven at trial, would constitute a meritorious defense to the forfeiture.

■ Golden's answer is couched solely in conclusionary language and is nothing more than a verbatim excerption of the statutory language in 21 U.S.C. § 881(a)(6). If we allow the setting aside of a default judgment on the mere recitation of the relevant statutory language or a phrase in the Federal Rules of Civil Procedure, then we will be establishing a new right to automatically set aside any default judgment if counsel is diligent enough to quote the applicable statute or rule of civil procedure.

In this case, Golden's silence speaks ever so loudly. For most Americans, $55,518 is not casual pocket change which one leaves on the bureau at night. Golden offers no explanation as to what was the specific source of the $55,518. One might ask: Did he recently withdraw this money from his bank account? Did he inherit it? Was he in a check-cashing business requiring such cash for legitimate customers? Were these profits from recent legitimate earnings? An affirmative answer to any of the above questions might raise a meritorious defense. Yet, upon scanning his answer and pleadings, one cannot find a word suggesting even one alleged fact that might provide an inference of a meritorious defense. Default judgments cannot be set aside simply because of a lawyer's artistry in offering ambiguous conclusions.

If this were an original forfeiture trial, Golden's simple denial would be insufficient to meet his burden of showing that the money was not intended to be used in exchange for a controlled substance. Therefore, Golden has not alleged facts which, "if established on trial, would constitute a complete defense to the action." *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d at 244. The district court, consequently, did

---

The provision in the customs laws that applies here is found in 19 U.S.C. § 1615 which provides in relevant part:

  In all suits or actions (other than those arising under section 1592 of this title) brought for the forfeiture of any vessel, vehicle, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value of any vessel, vehicle, merchandise or baggage, because of violation of any such law, the burden of proof shall be upon the defendant: *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court, subject to the following rules of proof

  . . . .

not abuse its discretion in holding that Golden failed to establish a meritorious defense.

Because we agree with the Court below that Golden failed to establish a meritorious defense, his motion to set aside the entry of default and the default judgment must be denied. Consequently, we do not decide the issues whether the government would be prejudiced by our granting Golden's motion or whether Golden's culpability led to the default and to the default judgment.

## CONCLUSION

For the foregoing reasons we find that the district court did not abuse its discretion in denying Golden's motion to set aside the entry of default and the default judgment. Therefore, we will affirm the order of the district court.

GARTH, Circuit Judge, dissenting:

I disagree with the majority opinion's analysis and the conclusion which it reaches. In my opinion, the majority, while acknowledging this court's precedents, has failed to apply the standard we have adopted in cases involving default judgments. In doing so, it has departed from and violated our longstanding policy of preventing disputes from being prematurely ended without being resolved on the merits.

### I.

In determining whether the district court abused its discretion in refusing to reopen a default judgment, we must keep in mind the operative premise: "[T]his court does not favor defaults and ... in a close case doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.,* 700 F.2d 120, 122 (3d Cir.1983). That is why we have held that three factors must be considered in deciding whether to reopen a default judgment: first, whether the plaintiff will be prejudiced; second, whether the defendant has a meritorious defense; and third, whether culpable conduct of the defendant led to the default. *Id.; Feliciano v. Reliant Tooling*

*Co.,* 691 F.2d 653, 656 (3d Cir.1982); *Medunic v. Lederer,* 533 F.2d 891, 893–94 (3d Cir. 1976).

My analysis of the relevant factors as they apply to the circumstances of this case leads me to conclude, contrary to the majority, that the district court abused its discretion in refusing to vacate the default judgment entered against Golden. The government conceded, in its brief and at oral argument, that there would be no prejudice to its cause if the default judgment were to be set aside. The other two factors, establishment of a meritorious defense, and lack of culpable conduct, are more than satisfied by the record in this case under the liberal standards that must be applied in considering a motion to set aside a default, *see, Medunic v. Lederer, supra,* 533 F.2d at 894.

### A.

As the majority notes, to establish a meritorious defense a defendant need only show allegations that, if established, would make out such a meritorious defense. *Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir.1982). That it is sufficient to proffer very little in the way of substance is shown by the *Farnese* court's favorable citation of *Keegle v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 374 (D.C.Cir.1980).

*Keegle* held that it is sufficient if the defendant's allegations "contain 'even a hint of a suggestion' which, [if] proven at trial, would constitute a complete defense." Moreover, the *Keegle* court found it sufficient that the defendant, who had been sued for fraud, breach of contract, and violations of securities laws,

> alleged lack of subject matter jurisdiction and denied any misrepresentations, fraudulent acts, or securities law violations. Though somewhat broad and conclusory, those allegations adequately meet the meritorious defense criterion for setting aside the default. (footnote omitted)

In direct conflict with *Keegle* is the case relied on by the district court, *In re Stone v. Stone,* 588 F.2d 1316 (10th Cir.1978). In

*Stone,* allegations were held insufficient to establish a meritorious defense to a charge of false pretenses and false representations, because these allegations merely denied that the defendant committed acts constituting false pretenses and false representations. The *Stone* court said that the allegations were too general and contained no relevant specific facts supporting a defense. *Keegle,* by contrast, held sufficient allegations that essentially did no more than deny the complained-of acts. Thus, at the outset, it is evident that the district court abused its discretion when it applied the Golden facts to a standard which this court has never accepted.

It must be emphasized that it is the *Keegle* standard, not the *Stone* standard, that Chief Judge Seitz relied upon in writing for this court in *Farnese, supra.* Thus it is the *Medunic-Farnese-Keegle* standard that has been adopted as the standard to be applied in this circuit. Under that standard, it is simply incorrect to require, as the majority does, that Golden do more than he did in asserting the defense upon which he relies. Contrary to the majority's statement, a defendant need not allege specific facts showing what he intended or did not intend to do with the money; nor must a defendant allege specific facts as to the source of his funds, such as whether they were inherited or earned, or whether they had just been withdrawn from his bank account. (See maj. op. at 11.) None of the cases cited by the majority, i.e., *Gross v. Stereo Component Sys., Inc.,* 700 F.2d 120 (3d Cir.1983); *Feliciano v. Reliant Tooling Co.,* 691 F.2d 613 (3d Cir.1982); *Farnese v. Bagnasco,* 687 F.2d 761 (3d Cir.1982); *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242 (3d Cir. 1951), holds that the defendant must allege "specific facts."[1] Indeed, *Feliciano* itself held it sufficient to establish a meritorious defense for the defendant (an English in-

surance company) to assert merely that the insurance policy on which it was sued did not cover the plaintiff's injury; support for this argument was provided by a barrister's opinion.

In my view, there is no principled difference between the insurance company's denial of its liability under the policy which it issued and Golden's denial that "the money seized was not property subject to forfeiture under the provisions of 21 U.S.C. § 881, i.e., it was neither furnished nor intended to be furnished by any person in exchange for a controlled substance." The defendants' liability in both cases, and especially in Golden's case, is predicated on the existence of certain facts. If such facts do not exist, no more is required under *Farnese, Medunic,* or *Keegle* than that the defendant seeking to vacate the default, deny their existence in order to establish his defense. Indeed, I do not know what more Golden could have said when charged with intending to exchange money for cocaine than to say "the money seized . . . was neither furnished nor intended to be furnished in exchange for a controllable substance."

The majority's holding is particularly pernicious in this case. The gist of the offense is the defendant's subjective intent with respect to the money: the government must prove that the money was "intended to be furnished" for use in an illegal transaction.[2] The majority's analysis requires that a defendant aver "specific facts" tending to show that he had a different intent from the one he was accused of having. Engrafting such an unnecessarily strict requirement onto our established liberal standard has the effect of dramatically altering the test announced in *Tozer, Medunic,* and *Farnese,* without the benefit of the in banc approval required for such a departure

---

1. We have repeatedly recognized the sufficiency of "notice pleading," observing that the pleader need not plead evidence, or facts on which the claim is based. *See, e.g., Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

2. The complaint in the forfeiture action alleged that the currency was *intended* to be furnished in exchange for cocaine, although 21 U.S.C. § 881(a)(6) (1982), the applicable statute, also provides for forfeiture of money *actually* furnished for such a transaction.

from precedent. Third Circuit Internal Operating Procedure 8C.

It is plain that the majority simply does not believe Golden, and is unwilling to let his credibility be tested by a trier of fact. Instead the majority applies an unsupported requirement that the defendant aver "specific facts" beyond his denial of the alleged facts. Yet all the government must do to convict Golden is prove the existence of the very facts which Golden has denied. Under the established standard of this court, announced in numerous cases, most particularly in *Tozer, Medunic,* and *Farnese* (citing *Keegle*), Golden has done all that is required to establish a meritorious defense.

### B.

The third factor, whether culpable conduct of the defendant caused the default, also supports a holding that the judgment should have been vacated. The majority's brisk summation of the events leading up to the default obscures the important fact that throughout the period between the date when the government filed its claim and the date of the judgment, Golden did not know whether the office of the Federal public defender would provide him with counsel. Indeed, it would seem that it was not until the very date the government filed for default that Golden and the court were finally informed to the contrary by that office.

To more fully show this, a complete chronology of events, including relevant correspondence, is warranted.

9 Nov. 82   DEA/FBI seizes $55,518.05 in Golden's residence, arrests and jails Golden.

23 Dec. 82.   U.S. files complaint alleging the $55,518.05 is subject to forfeiture under 21 U.S.C. § 881.

29 Dec. 82   U.S. gives public notice of forfeiture action, and sets deadline for filing of claims, 6 Jan. 83.

6 Jan. 83   Deadline passes, no claim filed.

21 Jan. 83   U.S., in letter to Golden's *criminal* attorney Crawford, says U.S. will seek default judgment on or before 31 Jan. 83, and cautions that claims filed now must include request to extend time.

31 Jan. 83   In letter to District Court (Judge Mencer), U.S. says Golden desires to file claim but attorney Crawford is unsure whether he is permitted to handle civil case, U.S. asks court to determine whether appointment of counsel would be appropriate.

7 Feb. 83   U.S. Attorney sends copy of Jan. 31 letter to Crawford.

9 Feb. 83   Judge Mencer, in letter to U.S. Attorney, copy to Crawford, says he is unaware of any authority that he has to appoint *civil* counsel, asks U.S. or Crawford to advise him of any authority to contrary.

22 Feb. 83   Federal Public Defender Office in letter to Judge Mencer, copies to Crawford, U.S. Attorney, and Golden, says Office's opinion is that court has no authority to appoint civil counsel here.

22 Feb. 83   U.S. files application with clerk for entry of default, and informs court by letter with copies to Crawford and Golden.

24 Feb. 83   Judgment of default entered by court.

On or about 4 Mar. 83   Crawford by phone informs U.S. Attorney that he would try to find *civil* counsel for Golden.

9 Mar. 83   Golden, via new civil attorney Gelder, files claim to currency and motion to vacate default judgment.

30 Mar. 83   Motion denied on ground that Golden failed to set forth existence of meritorious defense.

The foregoing chronology shows that Golden and his criminal counsel spent the time between the government's filing of the claim, and its filing of the default judgment, engaged in efforts to determine whether Golden would have to obtain different counsel for the forfeiture proceeding. Both the government and the court were kept fully informed of these efforts; indeed the court in its February 9 letter virtually asked Golden's counsel to continue his ef-

forts to determine the answer to that question.

It is evident from the correspondence that all parties, including the government, had acted on the assumption that it was an open question whether Golden's criminal counsel could represent him in the forfeiture proceeding, and that the court would decide the question. The government's January 31 letter, which sets forth this position, clearly contemplates further delay until the court determines the proper course. This letter was written *after* the deadline for Golden's filing his answer had passed. Thus the government cannot argue, as it does in its brief to this court, that default was caused by Golden's "intentional neglect." Rather, the evidence shows that the government provided statements, on which Golden could reasonably rely, to the effect that there was nothing objectionable in any delay for the purpose of obtaining the answer to the question of which counsel would be proper.

The record unquestionably establishes that there is no culpable conduct attributable to Golden that might be said to have led to his default.

## II.

*Tozer, Medunic,* and *Farnese* explicitly require findings to be made by the district court as to the factors of prejudice, meritorious defense, and bad faith. The district court here focused only on the factor of meritorious defense, and in doing so not only relied on an incorrect standard but failed to apply the liberal standard that has been established by the precedents on this circuit. Moreover, the district court, as did the majority, has failed to attribute the appropriate significance to the defense which Golden has set forth.

My reading of the record reveals that all three of the relevant factors required to be satisfied by Golden have been satisfied, and thus support vacation of the default judgment. Golden did all that he was required to do in order to obtain an opportunity to reopen the forfeiture case. The government concededly was not prejudiced; no

bad faith has been shown or found; and, as discussed, Golden's defense, as alleged, is sufficient.

I conclude that the district court abused its discretion in refusing to vacate the judgment thus preventing the issues from being resolved by a trial on the merits. I therefore respectfully dissent.